UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

WESLEY MULLINS,

Plaintiff,

v.

BEN BRIESCKE, ROBERT BOB HARRELL, MIKE GREEN, LARRY COFFMAN, DR. KEN CARLSON, Lt. ROGER PERSON, Sgt. Dean FROKJER, SUSAN CHURCHILL, MIKE KICKBUSH, JAMES BRUTON, Sgt. DON DOAN, Officer WAYNE JOYCE, NATALIE LESEMAN and Officer DWIGHT JOHNSON,

Defendants.

Civil No. 00-1393 (PAM/FLN)

**REPORT AND RECOMMENDATION**

---

Plaintiff, a prisoner of the State of Minnesota, brought this action under 42 U.S.C. § 1983, claiming that Defendants have violated his rights under the First and Fourteenth Amendments to the U.S. Constitution. Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, (Docket No. 37), which is supported by a memorandum of law and various affidavits and exhibits, (Docket Nos. 38-48). Plaintiff has not filed any opposition to Defendants' summary judgment motion, and, in fact, he has not communicated with the Court at all since September 2000.

This matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that summary judgment be entered in favor of Defendants, and that this action be DISMISSED WITH PREJUDICE.

FILED AUG 09 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. FACTUAL BACKGROUND

All of the events on which Plaintiff's claims are based occurred while he was incarcerated at the Minnesota Correctional Facility at Oak Park Heights, Minnesota, ("MCF-OPH"). In July 1999, Plaintiff filed a written prisoner grievance known as a "kite," in which he complained about being put into a cell in which a large quantity of blood allegedly had been spilled. Plaintiff's complaint was investigated by prison officials who determined that his report was untrue, and that he should be charged with violating a prison rule that prohibits inmates from telling lies and making misrepresentations to prison officials. A disciplinary hearing was conducted by Defendant Ben Briesche, and he concluded, based on the evidence presented, that Plaintiff had indeed violated the rule against misrepresentations. As a result, Plaintiff was required to serve ten days in segregated confinement. (Affidavit of Ben Briesche, [Docket No. 39], ¶s 2-6.)

Plaintiff filed another kite in July 1999, in which he reported that a prison official, Defendant Susan Churchill, had told him to slice his wrists. Plaintiff was again charged with violating the prison rule that prohibits lies and misrepresentations, and another hearing was held. The hearing officer considered the evidence and concluded that Plaintiff had lied again, and Plaintiff was therefore required to serve another ten days in segregated confinement. (Id., ¶s 8-11.)

In January 2000, Plaintiff was again charged with lying and misrepresenting, this time because he falsely reported that he had been verbally and physically threatened by a prison doctor. Plaintiff pleaded no contest to the charges, and he was required to spend thirty more days in segregated confinement. (Affidavit of Steven Ayers, [Docket No. 40], ¶ 4.)

Plaintiff was charged with a fourth violation of the rule against lies and misrepresentations in February 2000. On that occasion, he filed a bogus kite in which he pretended to be another inmate and reported that he (i.e., the other inmate) was depressed and suicidal. After Plaintiff pleaded no contest to that charge, he was assigned to another thirty days in segregated confinement. (Id. ¶ 5.)

In July 2000, Plaintiff was placed on a suicide watch, ("Constant Observation Status"), in a special cell at MCF-OPH. He alleges that upon entering the cell, he discovered "smeared feces on the mattress and toilet... and ants crawling everywhere." (Amended Complaint, [Docket No. 28], ¶ 2.) He further alleges that he asked to be moved to a different cell, but Defendants Mike Kickbush, Wayne Joyce, Don Doane and Dwight Johnson all ignored his requests. Doane, Joyce and Johnson have filed affidavits directly contradicting Plaintiff's allegations. Doane states that Plaintiff's cell was checked before he was assigned to it, and no unsanitary conditions were found. Doane further states that he has no knowledge of any feces or ants in Plaintiff's cell. (Affidavit of Donald Doane, [Docket No. 48], ¶ 4.) Johnson's affidavit includes a similar statement. (Affidavit of Dwight Johnson, [Docket No. 47], ¶ 2.) Joyce also reports that he was unaware of any feces or ants in Plaintiff's cell, and that, in fact, he has never seen ants at MCF-OPH. (Affidavit of Wayne Joyce, [Docket No. 46], ¶ 2.) Plaintiff has not offered anything to contradict Defendants' affidavits.

Finally, Plaintiff alleges that in July and August of 2000, Defendant Natalie Leseman, a mailroom worker at MCF-OPH, refused to give him stamps for his "legal mail" because he could not pay for them. (Amended Complaint, [Docket No. 29], ¶ 1.)

Plaintiff is now attempting to sue fourteen state prison officials for allegedly violating his federal constitutional rights in connection with the various incidents described above. He claims that:

(1) he was deprived of his constitutional right to due process when he was placed in segregated confinement for violating MCF-OPH prison rules;

(2) Defendants wrongfully retaliated against him for exercising his First Amendment right to challenge the conditions of his confinement; and

(3) he was deprived of his constitutional right of access to the courts.

Plaintiff is seeking money damages for the alleged violations of his constitutional rights, and injunctive relief to prevent any possible future recurrence of Defendants' alleged misconduct.

**II. STANDARD OF REVIEW**

In considering a motion for summary judgment, the Court is to determine whether there are any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). When there is no reasonable construction of the facts that would allow the nonmoving party to prevail, the remedy of summary judgment is appropriate. Matsushita, 475 U.S. at 587-88. The role of the court is not to weigh the evidence, but to determine whether, as a matter of law, a genuine factual conflict exists. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences that can be drawn from the facts. Id.

If a motion for summary judgment is properly made pursuant to Rule 56(c) with affidavits or other evidence, the nonmoving party must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). The nonmoving party may not merely rest upon the allegations or denials in his pleadings. Id.

The Court is mindful that pro se pleadings should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); White v. Bond, 720 F.2d 1002, 1003 (8th Cir. 1983). Therefore, pro se pleadings are held to less stringent standards when challenged by motions to dismiss or for summary judgment. Haines, 404 U.S. at 520; Horsey v. Asher, 741 F.2d 209, 211 n.3 (8th Cir. 1984). Nonetheless, a pro se plaintiff's claim cannot survive a motion for summary judgment unless, in some form, he can fairly be said to have set forth specific facts demonstrating that there is a genuine issue for trial. Quam v. Minnehaha County Jail, 821 F.2d 522 (8th Cir. 1987); Miller v. Solem, 728 F.2d 1020, 1023, (8th Cir.), cert. denied, 469 U.S. 841 (1984).

## III. DISCUSSION

### A. Due Process Claims

To maintain a due process claim, as Plaintiff is attempting to do here, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). In this case, Plaintiff apparently believes that he has a protected liberty interest in remaining in the general prison population, and that he therefore cannot be placed in segregated

confinement without being afforded due process. However, that is simply not correct.

A constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown that he has suffered the type of unusual hardship or dramatic departure from ordinary prison life contemplated in Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he has suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. Our Court of Appeals has explained that, under Sandin, prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996) (emphasis added).

While Plaintiff's various assignments to segregated confinement were undoubtedly unpleasant, they do not constitute the type of "atypical and significant hardship" that will support a due process claim. Sandin itself shows that segregated confinement is a normal and expectable aspect of prison life, and such confinement, for limited periods, does not usually constitute the kind of "atypical and significant hardship" that implicates a constitutionally protected liberty interest. See also Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) ("[w]e have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin"). Although the term of segregated confinement at issue in Sandin was only 30 days, other federal cases decided after Sandin show that even much longer periods of segregated confinement do not constitute the type

of hardship that can give rise to a due process claim.[1] There are quite a few federal court decisions rejecting due process claims based on periods of segregated confinement much longer than the approximately 80 days (in total) at issue in the present case.[2] At the same time, the Court is not aware of even one case in which a prisoner has been allowed to maintain a due process claim based on a term of segregated confinement of less than a full year.

Based on Sandin and its progeny, the Court concludes that Plaintiff's segregated confinement is not the type of hardship that would implicate a protected liberty interest. Because he was not deprived of a constitutionally protected interest, he was not entitled to

---

[1] In two unpublished decisions, the Eighth Circuit has found that periods of segregated confinement far longer than the 30 days involved in Sandin do not constitute an atypical and unusual hardship giving rise to a constitutionally protected liberty interest. Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (135 days in disciplinary and administrative segregation would not support due process claim). See also Wycoff v. Nichols, 94 F.3d 1187, 1189-90 (8th Cir. 1996) (10 days of disciplinary detention followed by 90 days in a maximum security cell, did not constitute an atypical hardship requiring the protections of due process).

[2] See e.g., Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (30 months); Griffin v. Vaughn, 112 F.3d 703 (3rd Cir. 1997) (15 months); Bonner v. Parke, 918 F.Supp. 1264 (N.D.Ind. 1996) (36 months); Dabney v. Anderson, 92 F.Supp.2d 801 (N.D.Ind. 2000) (36 months); Polanco v. Allan, No. 93-CV-1498 (N.D.N.Y. 1996), 1996 WL 250237 (12 months); Acosta v. McGrady, No. CIV.A. 96-2874 (E.D. Pa. 1999), 1999 WL 158471 (14 months); Johnston v. Vaughn, No. CIV.A. 00-CV-1844 (E.D.Pa. 2000) 2000 WL 1694029 (15 months). See also, Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of hardship that would support a due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners").

due process. Plaintiff's due process claims must therefore be dismissed.[3]

B. Retaliation Claims

Plaintiff also claims that he was subjected to "retaliation" during his confinement at MCF-OPH. He contends that the various disciplinary charges at issue in this case were brought by prison officials who wanted to punish him for exercising his constitutional right to register grievances about the conditions of his confinement. He also claims that some of the Defendants placed him in a cell with feces and ants for retaliatory reasons.

Prison officials can be sued under 42 U.S.C. § 1983 if they retaliate against a prisoner for exercising his constitutional rights, even if their conduct would not otherwise be actionable. Murphy v. Missouri Dept. of Correction, 769 F.2d 502, 503 (8th Cir. 1985) (per curiam). An inmate may therefore have an actionable civil rights claim if he is subjected to disciplinary sanctions for exercising his constitutional right to petition governmental officials for redress of grievances, even if the sanctions at issue would not normally support such a claim. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989). See also Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) ("[a] prisoner has a cause of action when the prisoner alleges that prison officials filed disciplinary charges based upon false allegations

---

[3] Defendants contend that even if Plaintiff had been entitled to the protections of due process before being assigned to segregated confinement, his present claim would still have to be dismissed, because he did, in fact, receive due process. "When inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record." Ragan, 113 F.3d at 876. Defendants contend that Plaintiff received these procedural protections, and the record supports that contention. Moreover, Plaintiff has offered no evidence to the contrary. Thus, the Court agrees that Plaintiff received all of the procedural protections to which he was constitutionally entitled, and that his due process claim must be rejected for this additional reason.

against the prisoner in retaliation for the prisoner's participation in grievances against prison officials"), cert. denied, 515 U.S. 1145 (1995). However, when a retaliation claim is based on prison disciplinary sanctions allegedly imposed for retaliatory purposes, the prisoner-plaintiff must show that the disciplinary charges brought against him were groundless. Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990). If the prisoner cannot meet that burden, the charges will be deemed to have been brought for legitimate non-retaliatory reasons, and the retaliation claim will be dismissed. Henderson, 29 F.3d at 469.

Thus, in the instant case, Plaintiff must show that the various disciplinary sanctions imposed against him at MCF-OPH resulted solely from Defendants' desire to punish him for asserting his constitutional rights. Based on the evidence of record, no reasonable trier of fact could find that Plaintiff was disciplined only because he tried to assert his constitutional rights. To the contrary, the record clearly demonstrates that Plaintiff was disciplined because he repeatedly violated prison rules. Defendants' evidentiary submissions, which Plaintiff has made no effort to refute, clearly show that each disciplinary sanction imposed against him resulted from a substantiated rule infraction. See Moore v. Plaster, 266 F.3d 928, 931 (8th Cir. 2001) ("a defendant may successfully defend a retaliatory-discipline claim by showing 'some evidence' that the inmate actually committed a rule violation"), cert. denied, 122 S.Ct. 1797 (2002). Based on Defendants' uncontradicted evidence, the Court finds, as a matter of law, that there were valid reasons, unrelated to any retaliatory motive, for each disciplinary sanction imposed against Plaintiff. Therefore, Plaintiff cannot sustain a retaliation claim based on the incidents described in his pleadings. See Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993) ("if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then

the prisoner's claim that the discipline was retaliatory in nature must fail"), cert. denied, 512 U.S. 1209 (1994).

Plaintiff's second retaliation claim, based on allegations of feces and ants found in his cell, must also be dismissed. Defendants have presented ample evidence to refute Plaintiff's feces and ants allegations, (Docket Nos. 46, 47 and 48), while Plaintiff has offered no evidence to support his allegations. Because Plaintiff has not effectively opposed Defendants' motion, they are entitled to summary judgment on the second retaliation claim. See Fed. R. Civ. P. 56(e) (if the non-moving party does not respond to a well-supported motion for summary judgment, the motion may be granted).

C. Access To The Courts

Finally, Plaintiff claims that he was deprived of his constitutional right of access to the courts because Defendant Leseman refused to give him free postage stamps for his outgoing "legal mail." Even if indigent prisoners do have a constitutionally guaranteed franking privilege for legal mail, (a dubious proposition that Plaintiff has made no effort to substantiate), Plaintiff's current "access to the courts claim" would still be subject to summary dismissal, because he has not described any "actual injury" attributable to Leseman's alleged refusal to give him free stamps.

To prevail on an access-to-the-courts claim, a prisoner must demonstrate some "actual injury." Lewis v. Casey, 518 U.S. 343, 349 (1996). See also, Klinger v. Department of Corrections, 107 F.3d 609, 617 (8th Cir. 1997) ("[i]n Lewis v. Casey, the Supreme Court held, based on principles of standing, that actual injury must be proven in order to prevail on an access-to-courts claim"). There is no "abstract, freestanding right" of access to legal resources; the inmate must show that he has been deprived of some specific opportunity

to defend himself, or advance a viable legal claim, in some particular action. Lewis, 518 U.S. at 351; Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam). See also Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) ("plaintiffs must plead and prove prejudice stemming from the asserted violation"). "[I]n order to establish a claim of constitutional dimensions, an inmate must come forward with something more than vague and conclusory allegations of harm. He must establish a specific prejudice...." Bannan v. Angelone, 962 F.Supp. 71, 74 (W.D.Va. 1996). "Plaintiffs must demonstrate, for example, that the inadequacy" of access to legal resources "caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." Pilgrim, 92 F.3d at 416. See also, Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996).

The actual injury requirement applies not only where prisoners are challenging the adequacy of law libraries and legal assistance, but also where they are complaining about other conduct that allegedly interferes with their ability to participate in court proceedings -- including alleged interference with prisoner mail. Costello v. Hynes, No. 96 CIV 6808(LBS), (S.D.N.Y. 1997), 1997 WL 580704 at *3 (access to courts claim dismissed where "Plaintiff does not demonstrate actual injury as a result of the claimed interference with his legal mail"); Brown v. Williams, No. 95 CV 3872(SJ), (E.D.N.Y. 1998), 1998 WL 841638 at *5 (access to courts claim dismissed where "Plaintiff has neither established that the treatment of his mail prevented him from presenting his case in a meaningful way nor shown that some prejudice or [the] denial of a legal claim resulted from the undelivered mail"); Easter v. Hill, No. 95-3047-KHV, (D.Kan. 1997), 1997 WL 30553 at *5 (same); Rivera v. Chesney, No. CIV. A. 97-7547 (E.D.Pa. 1998) 1998 WL 639255 at *2 (same). See also, Myers, 101 F.3d at 544 (Lewis rule applied to claim based on alleged deprivation of writing and mailing

materials).

In this case, Plaintiff's access-to-the-courts claim is plainly deficient, because he has not identified any specific instance in which he lost a specific legal right as a direct result of Defendant Leseman's alleged refusal to give him free stamps. There are no facts suggesting that Plaintiff has actually lost any specifically identified claim or defense in any pending or contemplated legal proceeding, which would have been preserved if not for Leseman's alleged interference. Because Plaintiff has presented no facts (or allegations) showing that he suffered any actual injury due to lack of free postage, his access-to-the-courts claim must be summarily dismissed. See Sabers, 100 F.3d at 84 (access-to-courts claim was properly dismissed where prisoner "offered no facts" showing that alleged lack of legal resources actually "prejudiced her in a legal case").

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff cannot succeed on any of the claims he is attempting to maintain in this action. His due process claim fails because he was not deprived of any liberty interest warranting the protections of due process. His retaliation claim fails because the record shows that (a) he was disciplined for valid non-retaliatory reasons, and (b) he was not placed in a cell with feces and ants for retaliatory reasons (or otherwise). His access-to-the-courts claim fails because there is no indication that he suffered any "actual injury" as a result of Defendant Leseman's alleged refusal to give him free stamps. Thus, the Court concludes that Defendants' motion for summary judgment should be granted, and that this action should be dismissed with prejudice.

**V. RECOMMENDATION**

Based upon the above, and upon all of the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Defendants' Motion For Summary Judgment, (Docket No. 37), be GRANTED; and

2. The action be DISMISSED WITH PREJUDICE.

Dated: ~~July~~ Aug 8, 2002

FRANKLIN L. NOEL
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by 8-23-02, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.